IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01504-NYW-KAS

DONALD PALMER,

    Plaintiff,

v.

THE UNITED STATES,
THE UNITED STATES POSTAL SERVICE, and
THE UNITED STATES POSTAL SERVICE OFFICE OF THE INSPECTOR GENERAL,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Defendants' **Motion to Dismiss** [#31][1] (the "Motion"). Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a Response [#35] in opposition to the Motion [#31], and Defendants filed a Reply [#39]. The Motion [#31] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#33]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons

---

[1] "[#31]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation. Cited page numbers on these documents refer to the CM/ECF page numbers listed at the top of the official documents, rather than any page numbering created by the litigants.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

stated below, the Court **RECOMMENDS** that the Motion [#31] be **GRANTED in part** and **DENIED with prejudice in part**.

# I. Background[3]

Plaintiff is a retired United States Postal Service ("USPS") employee. *Am. Compl.* [#18] at 12. Plaintiff asserts that he worked at the USPS for thirty years until January 31, 2021. *Id*. In January of 2015, Plaintiff became postmaster of several towns in Colorado, including Palisade, Mesa, Molina, and Colbran. *Id*. at 16.

At some point during 2016, Nicklas Morgan ("Morgan")[4] became Plaintiff's supervisor. *Id*. Plaintiff asserts that their working relationship started out well, but that things quickly began to deteriorate. *Id*. Plaintiff states that the first issue occurred on a conference call, on an unspecified date, where Mr. Morgan "called into question the ability of [Plaintiff] to do his job" and then escalated to "belittling, arguing, and threats of administrative action." *Id*.

Plaintiff asserts Mr. Morgan followed through on his threat and that Plaintiff was given a "Letter of Warning" for being unaware of issues going on at one of his smaller offices. *Id*. at 8, 16. The letter was placed in Plaintiff's Official Personnel Folder, and Plaintiff asserts it was supposed to be removed after six months. *Id*. at 8. Sometime in

---

[3] For the purposes of resolving the Motion [#31], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#18]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff provides additional allegations or possible new claims in his briefs, the Court notes that a party may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

[4] Mr. Morgan's first name is spelled multiple ways throughout the parties' filings ("Nicholas", "Nicklas"). The Court uses the spelling utilized by Defendants in their Motion. *See* [#31] at 2.

2018, however, Plaintiff noticed the letter was still in his file and requested that Mr. Morgan remove it. *Id*. Plaintiff asserts he had to request three additional times (on January 11, 2019, July 16, 2020, and August 18, 2020) before the letter was removed from his file. *Id*. Plaintiff alleges this was a way for Mr. Morgan to harass him. *Id*.

Between 2016 and 2020, Plaintiff states that Mr. Morgan regularly denied his requests to take annual leave. *Id*. at 6, 17. On one occasion on March 30, 2020, Plaintiff asserts Mr. Morgan "became irate and yelled at [Plaintiff] to 'Shut Up'" when Plaintiff asked when he would be allowed to use his personal leave days. *Id*. at 6. During 2018, Plaintiff made numerous requests to transfer to other offices to be able to live closer to his wife's medical care, but Mr. Morgan denied all his requests. *Id*. at 7.

On January 10, 2019, Plaintiff was a on a conference call with Mr. Morgan and several other postmasters. *Id*. at 17. During the call, Plaintiff alleges Mr. Morgan was very hostile and rude to several of the other postmasters. *Id*. Plaintiff asserts he became upset with how Mr. Morgan was treating the other postmasters. *Id*. Plaintiff confronted Mr. Morgan, saying that he did not appreciate what was being said, and "I'm offended by what you said, and it's a hostile situation." *Id*. Mr. Morgan replied that they could continue the conversation after the call ended. *Id*. Plaintiff believes that this interaction should have triggered "numerous actions" according to agency policy. *Id*. at 18.

The following day, Plaintiff sent an email to his direct supervisor, Michael King ("King") accusing Mr. Morgan of "offensive and derogatory comments." *Id*. Plaintiff asserted Mr. Morgan's behavior created a "hostile and abusive work environment so severe that it interfered with or changed the condition of [Plaintiff's] employment." *Id*. Mr. King responded that Plaintiff's complaint had been sent to the District Office, and it would

3

be taken care of. *Id*. at 9, 18. On January 23, 2019, while waiting for a response to his complaint, Plaintiff received an email that Mr. Morgan had been promoted. *Id*. Plaintiff believes this showed his complaint was not being taken seriously, and that management was rewarding Mr. Morgan's actions. *Id*. at 18. Plaintiff believed he now had to "keep his mouth shut" about Mr. Morgan's "inappropriate conduct" in order to maintain his employment. *Id*.

In August of 2020, Plaintiff received a new supervisor. *Id*. at 19. On one of the final conference calls with Mr. Morgan as Plaintiff's supervisor, Mr. Morgan allegedly said that "some of [the people on the call] would be out of a job in six months." *Id*. Plaintiff took this statement as a threat and attempted to follow up on his previous official complaint about Mr. Morgan. *Id*. On September 24, 2020, Plaintiff received an email from the regional Labor Relations Manager stating that he "could find no file or notes on [Plaintiff's] complaint." *Id*. at 8. Plaintiff continued to attempt to get more information about his complaint, which he believed had been ignored, lost, or destroyed. *Id*. at 19.

After repeated attempts to get information, a Human Resources ("HR") manager for the Western Area sent Plaintiff an email stating "HR has now spent countless hours reviewing your concern, and that review has now concluded." *Id*. The email continued, "You have received more than due diligence to discuss your concerns and be heard. You are now directed to cease continuing to pursue this issue via emails and correspondence to agency personnel which continues to take resources and time to respond to." *Id*. at 19-20. The email finished: "There will be no further communication on this matter back to you from the area/regional level. Failure to follow this directive may result in administrative action." *Id*. at 20.

4

Plaintiff believed that he was again being threatened with administrative action "for trying to stop a Hostile Work Environment" in "violation of the [a]genc[y's] Zero-Tolerance Policy, Whistleblower Protection guidelines . . . Poster 159, [and] Publication 552." *Id*. at 21. Plaintiff "reached out to the legal department" and to "the USPS [Office of Inspector General ("OIG")] Hotline and a Special Agent" who either "simply dismissed it or sent it to the District Office to investigate." *Id*.

Due to these events, Plaintiff "decided to retire." *Id*. Plaintiff states that the "last 4 or 5 years had taken their toll on [him]" and that he had been diagnosed with "major depression" as well as high blood pressure. *Id*. Plaintiff felt that he could "no longer work for an agency that violates its policies and guidelines." *Id*.

Plaintiff asserts multiple employment-related claims: harassment, hostile work environment, retaliation, and constructive discharge. *See id*. at 6-16. Plaintiff also asserts a whistleblower claim as well as a general tort claim for physical and mental effects Plaintiff suffered due to Defendants' "failure to protect" him from Mr. Morgan. *Id*. at 13. Plaintiff seeks $1,129,130 for ten years of lost back pay and future pay, $300,000 for "personal injury" caused by the times Plaintiff reported hostile work environment and nothing was done, $1,000,000 in punitive damages for the agency failing to follow its own guidelines, $1,000,000 in lawyer's fees,[5] and $500,000 for the effects suffered by Plaintiff's wife and daughter. *Id*. at 22. Additionally, Plaintiff seeks apologies from several people in USPS management as well as zero-tolerance training from everyone who was contacted about his complaint but did not take corrective action. *Id*. at 22-23.  In total, Plaintiff seeks $3,929,130. *Id*.

---

[5] While Plaintiff is litigating this action pro se, Plaintiff asserts he is in the process of retaining a lawyer. *Am. Compl.* [#18] at 22.

In the present Motion [#31], Defendants seek dismissal of Plaintiff's employment-related claims pursuant to Fed. R. Civ. P. 12(b)(6) and dismissal of Plaintiff's tort-related claim pursuant to Fed. R. Civ. P. 12(b)(1). The Court sua sponte raises certain other jurisdictional issues below. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## II. Legal Standards

### A.   Fed. R. Civ. P. 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). Because federal courts are tribunals of limited jurisdiction, a court must establish a statutory basis to exercise jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). A court may only exercise jurisdiction "in the presence rather than the absence of statutory authority." *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (quoting *Wyeth Lab'ys v. U.S. Dist. Ct.*, 851 F.2d 321, 324 (10th Cir. 1988)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014).

### B.   Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the

6

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

Defendants argue that Plaintiff's employment-related claims of hostile work environment, retaliation, and constructive discharge should be dismissed because Plaintiff lacks a cause of action to bring these claims in federal court. *Motion* [#31] at 6. Defendants argue Plaintiff's tort-related claims should be dismissed for lack of jurisdiction.

7

*Id*. at 9. Defendants additionally argue that the USPS OIG is not a proper defendant for either of Plaintiff's claims.[6] *Id*. at 14. The Court begins by sua sponte addressing subject matter jurisdictional issues for Plaintiff's employment claims.

### A.   Civil Service Reform Act

Plaintiff asserts multiple employment-related claims. *See Am. Compl.* [#18] at 6-14. Plaintiff seems to bring claims based on harassment, a hostile work environment, retaliation, whistleblower protections, and constructive discharge. *Id*. at 6, 9, 12. Plaintiff asserts that he attempted to report Mr. Morgan's conduct through official channels, did not get an official response, and was threatened with administrative action if he continued to pursue the claim. *Id*. at 18-19. Plaintiff does not allege his employment claims are rooted in discrimination. *See id*. at 11-12. Plaintiff affirmatively states that he "never felt that [he] was being discriminated against" and states that he did not file an Equal Employment Opportunity complaint. *Id*. Plaintiff does not claim he was discriminated against based on age, disability, race, or any other protected characteristic. *Id*. In his Reply [#39] to the Motion [#31], Plaintiff reaffirms that he "[is] not claiming discrimination." *Reply* [#39] at 3.

While the Government does not raise the argument, Plaintiff's employment-related claims are jurisdictionally barred by the Civil Service Reform Act ("CSRA"). The CSRA provides the exclusive procedure for challenging federal personnel decisions. *Petrini v. Howard*, 918 F.2d 1482, 1485 (10th Cir. 1990); *see also Steele v. United States*, 19 F.3d 531, 533 (10th Cir. 1994) (recognizing when state law tort actions "complain of actions prohibited by the CSRA they are preempted"); *Franken v. Bernhardt*, 763 F. App'x 678,

---

[6] Given the Court's other findings and recommendations below, the Court need not reach this issue at this time.

680 (10th Cir. 2019) ("This comprehensive scheme 'preempts other federal and state claims complaining of prohibited employment practices and precludes claims asserted directly under the Constitution.'") (quoting *Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011). In short, the CSRA created "an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors," contains procedures "by which improper action may be redressed," and "appl[ies] to a multitude of personnel decisions that are made daily by federal agencies." *Bush v. Lucas*, 462 U.S. 367, 385 (1983).

The CSRA provides a comprehensive list of "prohibited personnel practices." 5 U.S.C. § 2302. Relevant to Plaintiff's claims, the CSRA prohibits federal employers from taking adverse employment actions against employees for exercising a complaint or grievance right granted by law. 5 U.S.C. § 2302(b)(9)(A). In addition, the CSRA prohibits federal employers from taking adverse action against employees based on the employees' conduct that does not affect the performance of the employees themselves or others. 5 U.S.C. § 2302(b)(10).

The Postal Reorganization Act of 1971 ("PRA"), 39 U.S.C. §§ 1001-1011, 1201-1209, which establishes a comprehensive scheme governing employment relations within the USPS, specifically incorporates certain provisions of the CSRA for USPS employees, including Chapter 75 of the CSRA. 39 U.S.C. § 1005(a)(1). Chapter 75 of the CSRA includes several provisions establishing an appeals procedure for reviewing adverse personnel actions taken by federal agencies. *See* 5 U.S.C. §§ 7511-7514. The employment provisions in the PRA/CSRA preempt the more general provisions of the Federal Torts Claims Act ("FTCA"). *See Am. Postal Workers Union, AFL-CIO v. U.S.*

9

*Postal Serv.*, 940 F.2d 704, 708-09 (D.C. Cir. 1991) (finding preempted a claim of retaliatory discharge brought by a postal employee under the FTCA); *see also Hamann v. U.S. Dep't of Interior*, No. 21-cv-02383-DDD-NRN, 2022 WL 1605297, at *3 (D. Colo. May 20, 2022) (concluding that the plaintiff may not use the FTCA as a means of circumventing the CSRA when challenging personnel decisions) (citing *Am. Postal Workers Union*, 940 F.2d at 708), *report and recommendation adopted* 2022 WL 18777084 (D. Colo. Dec. 12, 2022).

"[I]f the purpose, text, and structure of a comprehensive federal employment scheme indicates an intent to cabin judicial review to the particular procedures of that scheme, an employee cannot avoid those limited procedures by bringing suit under other provisions of state or federal law." *Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 742 (10th Cir. 2021) (discussing *United States v. Fausto*, 484 U.S. 439 (1988)). Here, because the CSRA is a "comprehensive scheme to administer public rights in the context of federal employment, it is inappropriate to provide a judicial remedy beyond the regulatory scheme even if the complained-of action is not 'a listed prohibited personnel practice.'" *Franken*, 763 F. App'x at 681 (citing *Hill v. Dep't of Air Force*, 884 F.2d 1318, 1320-21 (10th Cir. 1989)).

Plaintiff's employment-related claims fall under those covered by the CSRA. Plaintiff asserts that he was threatened with administrative action for attempting to follow up on his official complaint about Mr. Morgan's actions, while the CSRA prevents federal employers from taking adverse employment actions against employees for exercising a complaint or grievance right granted by law. *Am. Compl.* [#31] at 19; 5 U.S.C. § 2302(b)(9)(A). Even Plaintiff's claims without a direct analogue in the CSRA would not be

proper to evaluate. *See Franken*, 763 F. App'x at 681. Because Plaintiff's employment claims fall within the CSRA, the Court lacks jurisdiction to evaluate them.

Accordingly, the Court **recommends** that Plaintiff's employment claims, including harassment, hostile work environment, retaliation, and constructive discharge, be **dismissed without prejudice** for lack of subject matter jurisdiction.

**B.   Whistleblower Claim**

Plaintiff asserts that he was threatened with administrative action for attempting to follow up on his reports about Mr. Morgan's conduct and believes that he should have been afforded whistleblower protections in accordance with internal USPS policy. *Am. Compl.* [#18] at 10, 20-21.

"Under the Whistleblower Protection Act, a federal employee who believes [his] employer retaliated against [him] for engaging in protected whistleblowing may file a complaint with the United States Office of Special Counsel." *Kulkarni v. Dep't of Veterans Affs.*, No. 2:24-cv-00210, 2025 WL 895356, at *3 (D. Utah Mar. 24, 2025) (citing 5 U.S.C. § 1214(a)(1)(A); *Young Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1328 (Fed. Cir. 2020)). "If the Office of Special Counsel terminates the investigation without seeking corrective action, the employee may file an [individual right of action] appeal with the [Merit Systems Protection Board]," where the Board's review is limited to the merits of the alleged Whistleblower Protection Act violations. *Id*. (citing 5 U.S.C. § 1214(a)(3)). The Board's review does not extend to discrimination claims. *See id*. (citing *Young*, 961 F.3d at 1327 (citing 5 C.F.R. § 1209.2(c)). Administrative Law Judges issue initial decisions on appeals to the Board, and those decisions may be appealed to the full Board. *Id*. Only the Federal Circuit Court of Appeals or another court of appeals of competent jurisdiction may review

11

final Board decisions. *Id*. (citing 5 U.S.C. § 7703(b)(1)(B)). District courts do not have jurisdiction over those final Board decisions.

The USPS has its own separate administrative process for evaluating whistleblower complaints, though its structure is largely similar to that outlined in the CSRA. *See* USPS, ELM 55 – EMPLOYEE AND LABOR RELATIONS MANUAL (Mar. 2024), § 666.3, https:// https://about.usps.com/manuals/elm/html/welcome.htm. USPS employees who wish to obtain whistleblower protection must file their complaints with the USPS OIG, which conducts a preliminary review to determine if any action is warranted. *Id*. §§ 666.31-666.32. When the OIG determines that no corrective action is necessary, the complainant may appeal the decision to an administrative law judge. *Id*. at § 666.37. USPS employees are not covered under the Whistleblower Protection Act and must follow internal USPS procedures to adjudicate any whistleblower claims. *Hickok v. U.S. Postal Serv.*, No. 2:04CV573 DAK, 2006 WL 3760137, at *6 (D. Utah Dec. 18, 2006).

Here, Plaintiff asserts that he attempted to contact the USPS OIG about whistleblower protection and other policy violations. *Am. Compl.* [#18] at 21 ("I reached out to the USPS OIG Hotline and a Special Agent, and they simply dismissed it or sent it to the District Office to investigate."). Plaintiff, however, does not assert that he attempted to appeal any decisions by the OIG office to an administrative law judge. Therefore, Plaintiff has not properly followed internal USPS procedures to adjudicate his whistleblower claim. Further, while Plaintiff asserts the agency failed to follow USPS internal procedures, violations of internal agency policy do not, by themselves, give rise to federal claims. *See Montano v. Donahoe*, No. CV 14-0634 WJ/GJF, 2017 WL 3412102, at *15 (D.N.M. Mar. 22, 2017) ("[N]either of [the claims based on violations of the USPS

12

whistleblower policy] are federal claims."); *see also Phillips v. Baxter*, No. 16 C 8233, 2020 WL 2197842, at *5 (N.D. Ill. May 6, 2020) (dismissing claim of alleged violation of internal agency policy under Rule 12(b)(6) and noting that "violation[s] of [agency] policy [are] not actionable[.]").

Accordingly, the Court **recommends** Plaintiff's whistleblower claim be **dismissed** for failure to state a claim upon which relief can be granted.

## C. FTCA

Plaintiff asserts a general tort claim based on the Agency's "fail[ure] to protect [him] against [h]arassment, [r]etaliation, [t]hreats, [a]buse, [b]elittling, . . . [e]mbarassment in front of [his] peers, unreasonable expectations, and micro-management" despite his adherence to Agency policy. *Am. Compl.* [#18] at 13. Plaintiff does not specifically assert a FTCA claim in the Amended Complaint [#18], but he does add the United States as a Defendant and alleges that he filed a "Form 95 tort claim" with the United States Department of Justice in September 2022, which was forwarded to the USPS on December 8, 2022. *Id*. at 22. Plaintiff states that he did not receive a response from the agency within six months. *Id*. The Court thus liberally construes the Amended Complaint [#18] as asserting one or more claims for relief under the FTCA.

The FTCA waives the government's sovereign immunity in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 217 (2021). If a complaint fails to allege all the elements of a tort in accordance with the law of the place where the act occurred, a court lacks

13

subject matter jurisdiction, and the claim must be dismissed under Rule 12(b)(1). *Id*. at 218.

An action against the United States under the FTCA "shall not be instituted" "unless the claimant shall have first presented his claim to the appropriate [f]ederal agency[.]" 28 U.S.C. § 2675(a). "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id*.

Here, Plaintiff has not asserted elements of any specific tort under Colorado law. *See Am. Compl.* [#18] at 13-14. His claims center around the USPS's "fail[ure] to protect" him from the hostile and stressful work environment. *Id*. at 13. Plaintiff states the stress from this environment was "affecting [him] physically, and mentally." *Id*. The Court therefore liberally construes Plaintiff's claim as one of intentional infliction of emotional distress or negligent infliction of emotional distress.

To the extent the Amended Complaint [#18] can be construed liberally as asserting a claim of intentional or negligent infliction of emotional distress, the claim may be covered by the Federal Employees' Compensation Act ("FECA"), which provides that "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty[.]" 5 U.S.C. § 8102(a). The Secretary of Labor must determine, as an initial matter, whether a claim falls within the purview of the FECA. *Farley v. United States*, 162 F.3d 613, 616 (10th Cir. 1998); *see also Burke v. United States*, 644 F. Supp. 566, 569 (E.D. La. July 21, 1986) (reasoning that "[r]ecovery under FECA is not dependent on the injury being caused by negligence or intent of any employees of the United States"; rather, "FECA applies if the injury is

14

suffered in the course of the employee's duty."). When a claim is presented to a court without having first been submitted to the Secretary for a ruling on FECA coverage, the court must permit the Secretary to evaluate the claim if there is a substantial question whether FECA coverage exists. *Id.* "A substantial question regarding [FECA] coverage exists unless it is certain the Secretary would not find coverage." *Id*. at 615-16. A federal proceeding is stayed pending a final decision of the Secretary about whether an employee was injured in the performance of duty. *See id.* at 616; *Tarver v. United States*, 25 F.3d 900, 902-03 (10th Cir. 1994). The Secretary's determination that FECA applies forecloses an FTCA claim. *See* 5 U.S.C. § 8116(c); *see also Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991) ("[T]he courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies."); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983) (noting FECA's exclusive-liability provision guarantees employees "the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government").

A claim for intentional or negligent infliction of emotional distress presents a substantial question of FECA coverage. *See Tippetts v. United States*, 308 F.3d 1091, 1094 (10th Cir. 2002) (citing *Farley*, 162 F.3d at 615-16) (claiming emotional distress resulting from sexual discrimination); *Bennett v. Barnett*, 210 F.3d 272, 274, 278 (5th Cir. 2000) (claiming emotional distress from on-the-job harassment); *McDaniel v. United States*, 970 F.2d 194, 195-97 (6th Cir.1992) (Secretary determined that claimant's emotional injuries caused by supervisor's harassment were covered by FECA); *Jones v. Tenn. Valley Auth.*, 948 F.2d 258, 265 (6th Cir.1991) (emotional distress resulting from harassment and intimidation by supervisors); *but see DeFord v. Sec'y of Labor*, 700 F.2d

15

281, 290 (6th Cir. 1983) (holding that the Compensation Act does not appear to cover claims for mental distress). The fact that the plaintiff's emotional distress is not alleged to have been accompanied by physical manifestations or emotional illness does not remove the question from the Secretary's purview. *See Tippetts*, 308 F.3d at 1095.

Here, Plaintiff has adequately alleged events that he might have been injured in a way covered under FECA. Thus, the Court cannot conclude that the Secretary would be unable to find FECA coverage of Plaintiff's tort-related claim in this case. If the Secretary determines FECA applies, the Court lacks jurisdiction to hear the FTCA action and it must be dismissed, regardless of whether FECA benefits are actually awarded. *Farley*, 162 F.3d at 616. Plaintiff should file an official notice with the Department of Labor to pursue his claim under FECA. 5 U.S.C. § 8121. Only if the Secretary determines FECA does not apply, may Plaintiff's action under the FTCA proceed here. *Id*.

Accordingly, the Court **recommends** that the Motion [#31] be **denied without prejudice** with respect to Plaintiff's tort claim and that this portion of this action be **administratively closed**, subject to reopening for good cause, while Plaintiff pursues his claim under FECA. *See* D.C.COLO.LCivR 41.2 ("A district judge . . . may order the clerk to close a civil action administratively subject to reopening for good cause.").

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#31] be **GRANTED in part and DENIED without prejudice in part**. The Court **recommends** that the Motion be **granted** with respect to all claims other than Plaintiff's tort claim. The Court **recommends** that the Motion be **denied without prejudice** with respect to Plaintiff's tort claim and that this

portion of this action be **administratively closed**, subject to reopening for good cause, while Plaintiff pursues his tort claim under FECA.

IT IS FURTHER **RECOMMENDED** that Plaintiff be ordered to (1) file his official notice with the Department of Labor within twenty-eight days of service of the District Judge's Order on this Recommendation and (2) file a status report every 120 days to update the Court on the status of his claim with the Secretary of Labor. Failure to comply with these requirements could result in dismissal of the remainder of Plaintiff's case for failure to prosecute.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: July 31, 2025

BY THE COURT:

17

Kathryn A. Starnella
United States Magistrate Judge

18